

# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

**DECLARATIONS**
Policy Number  18908  05

333 South Seventh Street, Suite 2200; Minneapolis, MN 55402
(612) 341-4530    (800) 422-1370    fax (800) 305-1510

## LAWYERS PROFESSIONAL LIABILITY POLICY
### (THIS IS A CLAIMS-MADE POLICY - READ CAREFULLY)

---

**Item 1.**
**Named Insured**
  Jonathan S. Shurberg, P.C.
**Office Address**
  1317 Apple Avenue
  Silver Spring, MD 20910

---

**Item 2.**
**Policy Period**

| 07/15/2008 | to | 07/15/2009 |
|---|---|---|
| (the Effective Date) | | (the Expiration Date) |

12:01 A.M., standard time at the address of the Named Insured stated herein

---

**Item 3.**
**Limits of Liability**   $ 1,000,000   Per Claim

  $ 3,000,000   Aggregate

---

**Item 4.**
**Deductible Amount**   $ 5,000   Per Claim

---

**Item 5.**
**TOTAL NUMBER OF LAWYERS:** 1    **TOTAL PREMIUM:** $2,693

---

**Item 6.**
**Applicable Forms and Endorsements:**
  MLM-15 (7-03), MLM-203 (2-06), MLM-2000 (4-05), MLM-MD (8-07)

---

In witness whereof, Minnesota Lawyers Mutual Insurance Company has caused this policy to be signed by its President and Secretary and countersigned by a duly authorized agent of the Company.

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY

By _____     By _____
  John J. Bowden, Secretary       R. Bertram Greener, Board of Directors Chairman

**EXHIBIT D**

_____
Authorized Agent

MLM-34 (5-94)                                    DEC15

# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

| Named Insured | Endorsement Number |
|---|---|
| Policy Number | Policy Period | Effective Date of Endorsement |

The above information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## PRIOR ACTS RETROACTIVE DATE ENDORSEMENT

The PRIOR ACTS RETROACTIVE DATE for the INSURED is 07/15/2004 .

If 'Full Prior Acts' is designated above, it means the date the INSURED first entered the private practice of law.

Words and phrases that appear in **all capital letters** have special meaning. Please refer to the *Definitions* section of the policy.

MLM-15 (7-03) Page 1 of 1          page 1 of 1

# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

| Named Insured | Endorsement Number |
|---|---|
| | |

| Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|
| | | |

The above information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

## MARYLAND CHANGES ENDORSEMENT

**CANCELLATION OR NON-RENEWAL**
The Cancellation or Non-Renewal section is deleted in its entirety and replaced with:

**CANCELLATION OR NONRENEWAL**
This policy may be canceled by:

(1) The NAMED INSURED by giving US written notice stating when thereafter cancellation is to be effective. Ninety percent of the pro-rata unearned premium will be returned to the NAMED INSURED.
(2) US with ten days written notice for non-payment of premium. WE will give the NAMED INSURED notice of premium due and the date due at least ten days before the effective cancellation date. Any return premiums will be computed pro-rata.

WE may cancel this policy during the term of the policy with 60 days written notice in accordance with state statutes regulating mid-term cancellation.

OUR written notice will be made by certified mail addressed to the NAMED INSURED shown in Item 1 of the declarations or by delivery to the NAMED INSURED'S last known address. The effective date of cancellation stated in the notice will become the end of the POLICY PERIOD. Earned premiums will be computed pro-rata. Premium adjustments will be made as soon as practicable. OUR tender of unearned premium is not a precondition of cancellation.

If this policy is financed by a premium finance company and WE or the premium finance company or the NAMED INSURED cancels the policy, the refund will be computed pro-rata excluding any expense constant, administrative fee or nonrefundable charge filed with and approved by the insurance commissioner.

WE may non-renew for any reason or no reason on 60 days notice prior to the expiration date of this policy.

Changes in the terms available on renewal will not be deemed to be a non-renewal of the policy.

WE will mail to the NAMED INSURED'S last known mailing address, and to any agent of record, notice of an increase in premium of 20% or more due at renewal. The notice will be sent by first-class mail 45 days prior to the expiration of the policy. This notice requirement does not apply to an increase in premium due to an increase in exposure.

**NOTICE OF ANNUAL MEETING**
The Notice of Annual Meeting section is deleted in its entirety and replaced with:

# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

## LAWYERS PROFESSIONAL LIABILITY INSURANCE
## CLAIMS-MADE POLICY

| | |
|---|---|
| **COVERAGE** | WE will pay all sums up to the limit of OUR liability, which the INSURED may be legally obligated to pay as DAMAGES due to any CLAIM:<br>(1) arising out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and<br>(2) resulting from the rendering or failing to render PROFESSIONAL SERVICES while engaged in the private practice of law or from rendering or failing to render PROFESSIONAL SERVICES as a PART TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY. |
| **DEFENSE AND SETTLEMENT** | WE have the exclusive right to investigate, negotiate and defend CLAIMS seeking DAMAGES against the INSURED for which this policy provides coverage. The INSURED may not negotiate or agree to a settlement of any CLAIM without OUR prior consent. There is no coverage under this policy to pay any part of a settlement of a CLAIM made without our consent.<br><br>WE will not settle a CLAIM without the written consent of the INSURED. If the INSURED refuses to consent to any settlement recommended by US and elects to contest the CLAIM or continue legal proceedings, then OUR liability for the CLAIM will not exceed the amount for which the CLAIM could have been settled within the applicable limit including CLAIM EXPENSE incurred with OUR consent to the date of such refusal. The INSURED must cooperate with US in the investigation and defense without charge by the INSURED or reimbursement of the INSURED's expenses, subject to the Supplementary Payment provision of this policy.<br><br>After WE have paid the limit of liability or resolved all CLAIMS covered by this policy WE will not:<br>(1) pay any CLAIM, judgment or expense.<br>(2) undertake or continue the defense or investigation of any CLAIM or suit. |
| **TERRITORY** | This policy applies to any act, error or omission which occurs anywhere in the world, provided the suit is first brought and resolved within the United States and its territories or Canada. |
| **CLAIMS-MADE PROVISIONS** | A CLAIM is covered only if made during the POLICY PERIOD or extended reporting period and reported to US:<br>(1) during the POLICY PERIOD;<br>(2) within 60 days after the end of the POLICY PERIOD; or<br>(3) during the extended reporting period.<br><br>The act, error or omission giving rise to the CLAIM must have occurred:<br>(1) during the POLICY PERIOD; or<br>(2) prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE, if the INSURED had no knowledge of facts which could reasonably support a CLAIM at the effective date of this policy.<br><br>A CLAIM is deemed made when:<br>(1) a demand is communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;<br>(2) a lawsuit is served upon the INSURED seeking DAMAGES; or<br>(3) an act, error or omission by any INSURED occurs which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.<br>We will not provide coverage for any CLAIM arising out of the same, related or continuing PROFESSIONAL SERVICES which resulted in a CLAIM prior to the first policy issued to the INSURED by US. |

**SUPPLEMENTARY PAYMENT**   WE will pay, in addition to the applicable limit of liability and not subject to any deductible:

(1) for loss of earnings to each INSURED for each day or part of a day if such INSURED'S attendance at a trial, hearing, or dispute resolution proceeding involving a CLAIM against such INSURED is at OUR request. The maximum WE will pay under this paragraph is $250.00 per day.

(2) for attorney fees and other reasonable costs, expenses or fees resulting from the investigation or defense of a proceeding before a licensing board, peer review or other sanctioning or licensing body incurred as the result of a notice of proceeding both first received by the INSURED and reported to US during the POLICY PERIOD, and arising out of an act, error or omission in the rendering of PROFESSIONAL SERVICES by an INSURED.

Provided the trial, hearing, dispute resolution proceeding or proceeding before a licensing board, peer review or other sanctioning or licensing body is due to rendering or failure to render PROFESSIONAL SERVICES which occurred on or after the PRIOR ACTS RETROACTIVE DATE and was reported to US during the POLICY PERIOD or within 60 days after the end of the POLICY PERIOD. The INSURED must have had no knowledge of any such proceeding at the effective date of this policy.

**The total amount we will pay under these Supplementary Payment Provisions shall not exceed $5,000 per policy period.**

---

**DEFINITIONS**   "CLAIM(S)" means:
(1) A demand communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;
(2) A lawsuit served upon the INSURED seeking DAMAGES; or
(3) An act, error or omission by any INSURED which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand.

"CLAIM EXPENSE(S)" means fees charged by an attorney(s) retained by US to defend CLAIMS and all expenses incurred by US or with OUR consent in the investigation, negotiation and disposition of CLAIMS. Salary charges or expenses of OUR regular employees are not included. Expenses of, or charges by, the INSURED without OUR prior written consent are not CLAIM EXPENSES.

"DAMAGE(S)" means monetary judgments or monetary settlements. DAMAGES does not include any of the following:
(1) any fine, penalty or sanction imposed by law or otherwise, or the multiplied portion of any damages assessed against any INSURED imposed directly or vicariously, whether or not imposed by statute or common law.;
(2) punitive or exemplary damages assessed against any INSURED, whether or not allowed by statute or common law;
(3) any forfeiture, reduction, discount or return of professional fees earned or claimed by any INSURED;
(4) the portion of any award, judgment or settlement that does not compensate for loss;
(5) any order for restitution or other payment by a court, tribunal, or agency of government made in connection with the criminal conviction of an INSURED; or
(6) the sanction of an INSURED to pay any fine, penalty or sum adjudged as restitution for damage or harm caused by an INSURED or as reimbursement to a court, tribunal or agency for its costs.

"INSURED" means:
(1) the NAMED INSURED ;
(2) any partner or employee of the NAMED INSURED at the time the CLAIM is reported for PROFESSIONAL SERVICES rendered:
   (a) on behalf of the NAMED INSURED; or
   (b) prior to their relationship with the NAMED INSURED, subject to the PRIOR ACTS RETROACTIVE DATE, if any;
(3) any former partner or employee for former acts, errors or omissions in PROFESSIONAL SERVICES on behalf of the NAMED INSURED;
(4) the heirs, assigns and legal representatives of the NAMED INSURED in the event of the INSURED's death, incapacity or bankruptcy to the extent that the INSURED would have been covered; and
(5) any lawyer who is acting as of counsel and:
   (a) is named and described in the application as of counsel; and
   (b) is performing PROFESSIONAL SERVICES on behalf of the NAMED INSURED.

"NAMED INSURED" means the person or entity shown in Item 1 of the Declarations and any PREDECESSOR FIRM.

"PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY" means an attorney who regularly engages in a private law practice and maintains a separate law office for that purpose in addition to acting as an employee of a governmental body, subdivision or agency.

"POLICY PERIOD" means the period from the effective date of this policy to the expiration date or earlier

termination date of this policy. POLICY PERIOD does not include any extended reporting period.

"PREDECESSOR FIRM" means any law firm to whose liabilities the NAMED INSURED is the majority successor in interest.

"PRIOR ACTS RETROACTIVE DATE" means the date before which no act, error or omission is covered even if a CLAIM resulting therefrom is reported during the POLICY PERIOD or extended reporting period.

"PROFESSIONAL SERVICES" means legal or notary services for others, including, but not limited to, services as administrator, conservator or guardian; executor or personal representative; trustee, escrow agent, title insurance agent; mediator, arbitrator or other participant in a dispute resolution process; activity as a member of a bar association, ethics, peer review, formal accreditation or licensing, or similar professional board or committee, and activities as an author, strictly in the publication or presentation of research papers, articles in attorney trade publications or similar materials only if the fees generated from such work are not greater than ten thousand dollars ($10,000).

"TOTALLY AND PERMANENTLY DISABLED" means that the owner, partner, officer or employed attorney has become so incapacitated as to be wholly prevented from rendering PROFESSIONAL SERVICES provided such disability:
(1) has existed continuously for not less than six (6) months;
(2) is expected to be continuous and permanent; and
(3) is certified by a medical doctor.

TOTALLY AND PERMANENTLY DISABLED does not include any condition which:
(1) is a result of attempted suicide whether or not the INSURED is sane;
(2) is a result of intentionally self-inflicted injuries; or
(3) is a result of the abuse or misuse of addictive or non-addictive chemical compounds or alcohol.

"WE", "US" and "OUR" mean Minnesota Lawyers Mutual Insurance Company.

## EXCLUSIONS

This policy does not afford coverage for the following:

(1) any CLAIM for DAMAGES arising out of the dishonest, criminal, malicious or deliberately fraudulent act, error or omission of the INSURED, subject to the Innocent Insured Protection provisions.
(2) any CLAIM for bodily injury, sickness or death of any person or damage to or loss of use of any tangible property.
(3) any CLAIM arising out of PROFESSIONAL SERVICES rendered by any INSURED in connection with any business enterprise:
   (a) owned in whole or in part;
   (b) controlled directly or indirectly; or
   (c) managed

   by any INSURED, and where the claimed DAMAGES resulted from conflicts of interest with the interest of any client or former client or with the interest of any person claiming an interest in the same or related business enterprise
(4) any CLAIM made by an employer against an INSURED who is an employee of such employer, unless the CLAIM is made against an INSURED acting as a PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.
(5) any loss sustained by an INSURED as a beneficiary or distributee of any trust or estate.
(6) any CLAIM arising out of an INSURED'S activities as an officer or director of an employee trust, charitable organization, corporation, company or business other than that of the NAMED INSURED.
(7) any CLAIM arising out of an INSURED'S activities as an elected public official or as a salaried employee of a governmental body, subdivision or agency, unless the CLAIM arises out of PROFESSIONAL SERVICES rendered as a PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY.
(8) any CLAIM arising out of an INSURED's activities as a fiduciary under the Employee Retirement Income Security Act of 1974, its amendments and any regulation or order issued pursuant thereto. This exclusion does not apply if the INSURED is deemed to be a fiduciary solely by reason of legal advice rendered with respect to an employee benefit plan.
(9) any CLAIM based upon or arising out of actual or alleged discrimination by an INSURED including those based on race, creed, age, sex, marital status or sexual preference.
(10) any CLAIM based upon or arising out of actual or alleged sexual harassment by the INSURED.
(11) any CLAIM involving an employment dispute between any INSURED and an employee.

(12) any CLAIM based on or arising out of an obligation to indemnify, if assumed by contract, which exposes the INSURED to liability which they would otherwise not have, but for such contract.
(13) any CLAIM arising out of the solicitation or sale of specific securities or specific investments by any INSURED;
(14) any loss or damage which is occasioned by terrorism, war, invasion, hostilities, act of foreign enemies, civil war, rebellion, insurrection, military or usurped power, or martial law or confiscation by order of any government or public authority.

## INNOCENT INSURED PROTECTION

(1) WE will provide coverage for any INSURED who did not personally participate in or acquiesce to any actual or alleged dishonest, criminal, malicious or deliberately fraudulent act, error or omission of another INSURED; provided that the INSURED who did not participate in or acquiesce to the act, error or omission which gives rise to a CLAIM:
  (a) had no knowledge of or reason to believe that any such act, error or omission was being committed;
  (b) took appropriate action to prevent further wrongdoing immediately after learning of the act, error or omission; and
  (c) immediately notifies US after obtaining personal knowledge of such act, error or omission.
(2) If a CLAIM has been concealed from US by an INSURED who was responsible for such CLAIM and which, but for such concealment, would have been covered, WE will cover any INSURED who did not participate in, acquiesce to or fail to promptly notify US after having personal knowledge of such concealment.

To be covered under this Innocent Insured Protection provision the INSURED must promptly notify US of such acts or concealment and otherwise comply with all policy provisions. WE will have the right to recover against any INSURED responsible for any CLAIM EXPENSE or DAMAGES paid under this paragraph.

## EXTENDED REPORTING PERIOD OPTIONS

A. **Firm Extended Reporting Period Endorsement**

If this policy is cancelled or non-renewed by either the NAMED INSURED or US, the NAMED INSURED may purchase a Firm Extended Reporting Period Endorsement for CLAIMS which are otherwise covered
(1) arising out of an act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible;
(2) resulting from the rendering or failing to render PROFESSIONAL SERVICES; and
(3) occurring on or after the PRIOR ACTS RETROACTIVE DATE and prior to the end of the POLICY PERIOD of the policy to which the endorsement is attached.

The period of extended reporting coverage will be 12 months following termination of this policy. It will be annually renewable at the option of the NAMED INSURED upon payment of the premium determined by US in accordance with the rules and rates in effect during the POLICY PERIOD of the policy to which the Firm Extended Reporting Period Endorsement attaches.

The Firm Extended Reporting Period Endorsement is available or renewable only if:
(1) the NAMED INSURED has paid all premium and deductible amounts due;
(2) the premium is paid within 60 days of the effective date or renewal date of this endorsement; and
(3) renewal coverage is not accepted by or offered to the NAMED INSURED in Item 1 of the declarations

The option to purchase this endorsement must be exercised in writing directly to US within 60 days after the end of the POLICY PERIOD or the expiring Firm Extended Reporting Period Endorsement. If the required notice is not submitted directly to US within the timeframe described above, the NAMED INSURED will not, at any later date, be able to purchase the Firm Extended Reporting Period Endorsement.

At the inception of the initial Firm Extended Reporting Period Endorsement the aggregate limit of liability will be fully reinstated to the aggregate limit of liability which was available on the policy to which it attaches.

Any Firm Extended Reporting Period Endorsement WE issue does not extend the policy term or change the scope of coverage.

B. **Individual Retirement Extended Reporting Period Endorsement**

Except as provided in C. below, in the event that any owner, partner, officer or employed attorney of the NAMED INSURED retires and ceases the performance of all private practice of law, that owner, partner, officer or employed attorney shall have the option to purchase a one (1), two (2), three (3), seven (7) year or an unlimited Individual Retirement Extended Reporting Period Endorsement for CLAIMS which are otherwise covered under the policy to which this endorsement attaches.

In the event that the owner, partner, officer, or employed attorney resumes the private practice of law, the coverage provided herein shall be void.

The premium for the Individual Retirement Extended Reporting Period Endorsement will be calculated using the rules and rates in effect during the POLICY PERIOD of the policy to which the Individual Retirement Extended Reporting Period Endorsement attaches. The entire premium for the Individual Retirement Extended Reporting Period Endorsement is earned at the commencement of the Individual Retirement Extended Reporting Period. In the event the owner, partner, officer or employed attorney obtains other applicable coverage, returns to the private practice of law, or cancels the Individual Retirement Extended Reporting Period Endorsement prior to its stated termination date, WE will not return any premium.

The owner, partner, officer or employed attorney's option to purchase the Individual Retirement Extended Reporting Period Endorsement must be exercised in writing directly to US no later than 60 days after the retired attorney is no longer continuously insured by US. Such written notice must include payment of the applicable premium for the endorsement. If the required notice is not submitted directly to US within the timeframe described above, the attorney will not, at any later date, be able to purchase an Individual Retirement Extended Reporting Period Endorsement.

Coverage under the Individual Retirement Extended Reporting Period Endorsement applies only if there is no other applicable coverage.

For a CLAIM to be covered under the Individual Retirement Extended Reporting Period Endorsement the INSURED must have no knowledge of facts which could reasonably support a CLAIM at the effective date of the Individual Retirement Extended Reporting Period Endorsement and the CLAIM must:

(1) arise out of an act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible; and
(2) result from the rendering or failing to render PROFESSIONAL SERVICES.

The act, error or omission giving rise to the CLAIM must have occurred on or after the PRIOR ACTS RETROACTIVE DATE and prior to the date of retirement.

Any Individual Retirement Extended Reporting Period Endorsement WE issue does not extend the policy term, change the scope of coverage or increase the limits of liability of the policy to which the endorsement is attached.

C. **Death or Disability Extended Reporting Period Endorsement**

If during the POLICY PERIOD an owner, partner, officer or employed attorney dies or becomes TOTALLY AND PERMANENTLY DISABLED in any manner other than:

(1) by attempted suicide or intentionally self-inflicted injuries whether or not the INSURED is sane; or
(2) as a result of the abuse or misuse of addictive or non-addictive chemical compounds or alcohol;

he or she will be entitled to an unlimited Individual Retirement Extended Reporting Period Endorsement, as described in B above, at no additional premium.

In the event that any other coverage applies or the disabled attorney resumes the private practice of law, the coverage provided herein shall be void.

If an INSURED dies and the Death or Disability Extended Reporting Period Endorsement is desired, the INSURED'S estate, heirs, executors or administrators must provide US written proof of the Insured's death within 180 days of the end of the POLICY PERIOD.

If an INSURED becomes TOTALLY AND PERMANENTLY DISABLED by a manner other than described in (1) or (2) above, and the Death or Disability Extended Reporting Period Endorsement is desired, the INSURED or the INSURED's legal guardian must provide US written proof of the total and permanent disability. The proof of disability must be received by US within 180 days of the end of the POLICY PERIOD. We retain the right to contest the certification by the INSURED's physician and it is a condition precedent to this coverage that the INSURED agrees to submit to examinations by any physician designated by US.

Any Death or Disability Extended Reporting Period Endorsement WE issue does not extend the policy term, change the scope of coverage or increase the limits of liability of the policy to which the endorsement is attached.

| | |
|---|---|
| **NOTICE OF CLAIMS AND DISCIPLINARY ACTIONS** | In the event of a CLAIM, disciplinary action, disciplinary investigation or notice to appear before a review board, the INSURED must:<br>(1) give immediate written notice to US; and<br>(2) forward every demand, notice, summons or other communication received by the INSURED or his or her representative to:<br>**Mail or Delivery**<br>Minnesota Lawyers Mutual Insurance Company<br>333 South Seventh Street, Suite 2200<br>Minneapolis, MN 55402<br>**Fax**<br>(800) 305-1510<br><br>In all events, you must give US notice during the POLICY PERIOD, within 60 days after the end of the POLICY PERIOD or during the extended reporting period for coverage to apply. |
| **LIMIT OF LIABILITY** | The per claim limit in Item 3 of the declarations is the maximum amount of OUR liability for all DAMAGES and CLAIM EXPENSE arising out of the same or related PROFESSIONAL SERVICES without regard to the number of CLAIMS or claimants.<br><br>All CLAIM EXPENSE shall first be subtracted from the limit of liability. The remainder, if any, is the amount available to pay money DAMAGES.<br><br>The aggregate limit in Item 3 of the declarations is the total amount of OUR liability for DAMAGES and CLAIM EXPENSE from CLAIMS first reported to US during:<br>(1) the POLICY PERIOD;<br>(2) any Individual Retirement Extended Reporting Period Endorsement; or<br>(3) any Death or Disability Extended Reporting Period Endorsement.<br><br>The inclusion in this policy of more than one INSURED will not increase the limits of OUR liability. |
| **DEDUCTIBLE** | The limit of liability will apply in excess of the deductible.<br><br>The deductible will be subtracted from the total amount of covered DAMAGES resulting from each CLAIM reported to US during the POLICY PERIOD.<br><br>The deductible is payable within 30 days of OUR written demand. |
| **REIMBURSEMENT TO US** | The INSURED will be liable for amounts WE have paid in settlement of CLAIMS or satisfaction of judgments in excess of the limits of OUR liability. The INSURED will also be liable for amounts paid within the deductible. These amounts will be payable within 30 days of written demand.<br><br>The INSURED will not be entitled to reimbursement of any amount paid as a deductible until WE have fully recovered all DAMAGES paid under this policy.<br><br>The INSURED will reimburse US all amounts held or recovered by the INSURED for any DAMAGES covered by this policy. |
| **SUBROGATION** | To the extent of any payment under this policy, WE will be subrogated to all of the INSURED's rights of recovery. The INSURED will do whatever is necessary to secure such rights. The INSURED will do nothing to prejudice these rights. |
| **ACTION AGAINST US** | No action shall lie against US unless:<br>(1) The INSURED has fully complied with all the terms of this policy and<br>(2) The amount of the INSURED's obligation to pay has been finally determined by judgment after trial and all appeals, if any, or by written agreement of the INSURED, the claimant and US.<br><br>No one may join US as a party to an action against the INSURED to determine the INSURED's liability under this policy. WE may not be impleaded by the INSURED. Bankruptcy or insolvency of the INSURED or his or her estate will not relieve US of any of OUR obligations. |
| **OTHER INSURANCE** | This policy is excess over any other insurance or other risk-shifting device including any automatic or optional extended reporting period, whether collectible or not, which provides insurance for such liability or CLAIM, whether the insurance is stated to be primary, pro rata contributory, excess, contingent or otherwise. Risk-shifting device includes, but is not limited to, self-insurance and other risk-sharing agreements.<br><br>This provision does not apply to other insurance written specifically to be excess of this policy. |

| | |
|---|---|
| **CANCELLATION OR NON-RENEWAL** | This policy may be canceled by:<br>(1) The NAMED INSURED by giving US written notice stating when thereafter cancellation is to be effective. Ninety percent of the pro-rata unearned premium will be returned to the INSURED.<br>(2) US with ten days written notice for non-payment of premium. WE will give The NAMED INSURED notice of premium due and the date due at least ten days before the effective cancellation date.<br><br>WE may cancel this policy during the term of the policy with 60 days written notice in accordance with state statutes regulating mid-term cancellation.<br><br>OUR written notice will be made by first class mail addressed to the NAMED INSURED shown in Item 1 of the declarations or by delivery to the NAMED INSURED'S last known address. The effective date of cancellation stated in the notice will become the end of the POLICY PERIOD. Earned premiums will be computed pro-rata. Premium adjustments will be made as soon as practicable. OUR tender of unearned premium is not a precondition of cancellation.<br><br>WE may non-renew for any reason or no reason on 60-days notice prior to the expiration of this policy. Changes in terms available on renewal will not be deemed to be a non-renewal of the policy. |
| **REPRESENTATION IN APPLICATION** | The application for coverage is a part of this policy.<br><br>By acceptance of this policy the INSURED agrees:<br>(1) the statements in the application are the representations of all INSUREDS;<br>(2) such representations are material as this policy is issued in reliance upon the truth of such representations; and<br>(3) this policy embodies all of the agreements between the INSURED, US and/or OUR agent. |
| **CHANGES** | The terms of this policy shall not be waived or changed, except by written endorsement provided by US.<br><br>Any additions to or deletions from the attorneys named in the application must be reported to US in writing within 30 days of the change. In the event of any such changes WE reserve the right to re-evaluate the risk and, at OUR option, take appropriate underwriting actions.<br><br>Any premium adjustments will be made on a pro-rata basis. |
| **ASSIGNMENT** | The INSURED may not assign this policy to any other person or entity. |
| **MUTUAL POLICY CONDITIONS** | The NAMED INSURED is a member of Minnesota Lawyers Mutual Insurance Company and shall participate in the distribution of dividends, to the extent and upon the conditions fixed and determined by the Directors.<br><br>The NAMED INSURED has one vote by virtue of this policy in the election of the Directors of Minnesota Lawyers Mutual Insurance Company.<br><br>Policyholders are not assessable for the debts and obligations of the Company. |
| **NOTICE OF ANNUAL MEETING** | The policyholder named herein is hereby notified that while this policy is in force, he, she or it is by virtue hereof a member of Minnesota Lawyers Mutual Insurance Company and that the annual meeting of said company is held at the same time and place of the annual convention of the Minnesota State Bar Association. The policyholder is the NAMED INSURED. |

*In witness thereof,* WE caused this policy to be executed and attested.

By

_____
John J. Bowden, Secretary

_____
Steven G. Brady, President

# NOTICE OF POLICY CHANGE – MARYLAND

*Dear policyholder:*

*Enclosed is a copy of the revised Maryland State Changes Endorsement. Due to a change in statutes and a court decision, we have made changes to this endorsement. The changes are discussed below.*

1. Due to a revision in state law there is a minor change to the provision regarding notice of renewal with increase in premium.

   The current wording:
   > WE will mail to the NAMED INSURED'S last known mailing address, and to any agent of record, notice of an increase in premium of 20% or more due at renewal. The notice will be sent by first-class mail 45 days prior to the expiration of the policy. This notice requirement does not apply to an increase in premium due to an increase in exposure.

   Has been revised to:
   > If the renewal policy premium has increased by 20% or more WE will mail to the NAMED INSURED'S last known mailing address, and to any agent of record, the amount of the renewal policy premium and the amount of the expiring policy premium. The notice will be sent by first-class mail 45 days prior to the expiration of the policy. In determining the amount of a premium increase at renewal for this requirement, WE are not required to include premium resulting from:
   > (1) an increase in the units of exposure;
   > (2) the application of an experience rating plan;
   > (3) the application of a retrospective rating plan;
   > (4) a change made by the INSURED that increases the insurer's exposure; or
   > (5) an audit of the INSURED.

2. We have also deleted the following Disclaiming Coverage provision.

   DISCLAIMING COVERAGE
   > WE may disclaim coverage on the grounds that an INSURED has breached the policy by failing to cooperate with US or by not giving US required notice only if WE establish by a preponderance of the evidence that the lack of cooperation or notice has resulted in actual prejudice to US.

*Should you have any questions, please do not hesitate to contact us at 1-800-422-1370. Thank you for selecting Minnesota Lawyers Mutual.*