September 26, 2007

Melvin Hirshman, Esquire
Attorney Grievance Commission of Maryland
100 Community Place
Suite 3301
Crownsville, MD 21032-2027

      RE:   Rosa DeJesus Peralta
            File No. 2008-0-335

Dear Mr. Hirshman:

    I am in receipt of your letter of September 5, 2007. I apologize for taking a slightly longer time than anticipated to prepare a response to your letter, as the case in question covered a period of some four years.

    With respect to my representation of Ms. Peralta, I initially met with her in December, 2002 regarding a workers' compensation case. She had been represented before the Workers' Compensation Commission by a different attorney, and, dissatisfied with that attorney's performance and the outcome of the case before the Commission, was seeking new counsel. The Commission had concluded that no accidental injury had occurred.

    Ms. Peralta was accompanied by her husband, Jose Peralta, at this and every subsequent meeting with me. For the most part, Mr. Peralta did the talking, as he did throughout my representation of his wife. Even when I asked questions directly of Ms. Peralta, Mr. Peralta would answer unless I specifically addressed the question to my client. Even then, he would often tell her, in Spanish, how to respond to me.

    Based on the information provided to me, I filed a timely appeal from the Workers' Compensation Commission decision in December, 2002 in the Circuit Court for Prince George's County. As it turns out, the case should have been filed in Montgomery County, and the attorney for the employer/insurer filed a Motion to Transfer. I did not oppose the transfer motion, and it was granted on February 21, 2003. While the motion was pending, I contacted the court reporter for the Commission to arrange for the transcript. When she learned that the case was pending a transfer to Montgomery County, she informed me that



EXHIBIT K

Melvin Hirshman, Esquire
September 26, 2007
Page 2

I should wait for the case to be physically transferred, so that she would not end up sending the record of the case to the "wrong court."

For reasons that are wholly unknown to me, the Circuit Court for Prince George's County did not physically transfer the file to Montgomery County for virtually an entire year, and the file was not transferred until late March, 2004. During the intervening period, I periodically made phone calls to the Circuit Court in Upper Marlboro, inquiring as to why the file had not yet been transferred.

Because it had taken so long for the file to actually be transferred, I did not recall the conversation with the court reporter and I did not request the transcript. Approximately two months after the file was finally transferred, on June 2, 2004, opposing counsel filed a motion to dismiss, on the basis of the missing transcript. That motion was never received by my office, and it was granted. Upon receiving a copy of the order granting the motion to dismiss, I immediately filed a Motion to Alter or Amend, stating the facts as I have outlined them above. I also immediately requested and paid for the transcript.

Following a hearing on September 2, 2004, the Circuit Court for Montgomery County granted my Motion to Alter or Amend, and vacated the order of dismissal. In so doing, the Court accepted my representation regarding the transcript.

All of the above matters were described in detail to the client, with the assistance of a Spanish-speaking employee in my office, and all relevant documents were forwarded to the client.

After two postponements, the case was heard before Judge Nelson Rupp on May 25, 2005. Ruling in my client's favor, Judge Rupp vacated the decision of the Workers' Compensation Commission and remanded the case to the Commission for further proceedings.

Both before and after the hearing, I engaged in extensive settlement discussions with opposing counsel. Ms. Peralta was offered reasonable and appropriate settlement terms, which I advocated to her. In particular, she was offered a settlement of $20,000 in full and final settlement of her claim for permanent partial disability to her knee. This was at the extreme high end of what Ms. Peralta could have recovered based on the PPD rating of 27% provided by Dr. Roy Rosenthal, M.D. following Ms. Peralta's surgery. The employer/insurer's offer clearly demonstrates that it did not believe that its position with respect to the issues surrounding the motion to dismiss were particularly strong.

Despite the extraordinarily reasonable and appropriate settlement offer, Ms. Peralta, at the urging of her husband, refused to accept the settlement on numerous occasions, as he told me that there must be "some way for her to get more money than that." Despite

Melvin Hirshman, Esquire
September 26, 2007
Page 3

my repeated explanations of the mathematical basis of WCC awards, and the distinction between workers' comp cases and automobile accidents, Ms. Peralta, and more specifically Mr. Peralta, refused to budge. At one point, opposing counsel and I arranged for mediation, believing that perhaps a third party could help to explain the appropriateness of the proposed settlement. Ms. Peralta, after promising repeatedly to come to mediation, subsequently refused to show, at the urging of Mr. Peralta.

The employer/insurer, unable to settle the matter, then appealed to the Court of Special Appeals, on the basis that the Circuit Court erred in granting the Motion to Alter or Amend. Specifically, the employer/insurer argued that the failure to request the transcript mandated a dismissal of the case. I filed a responsive brief, pointing out (1) that the case makes clear that the administrative agency record must be transmitted in its entirety, and (2) that any error by the Circuit Court was harmless, in that a workers' compensation appeal is heard *de novo*.

Following briefing and oral argument, the Court of Special Appeals (a) rejected my representations in court as a basis for the Circuit Court ruling, (b) in derogation of the clear case law I cited, concluded that the failure to order the transcript mandated dismissal, and (3) ignored the harmless error analysis altogether. In reaching conclusion (b), the Court cited as the basis for its ruling the very analysis it had **considered and rejected** in a prior case.

I then met with the client and her husband to discuss our options. I urged Ms. Peralta to allow me to file a certiorari petition and/or a motion for reconsideration. Mr. Peralta, however, informed me that his wife did not want me to do anything and that my representation was terminated. She confirmed this position, although not without some degree of hesitation. Without authority to act in any manner, I could not take any of the above steps to vindicate the client's position with respect to the workers' compensation case.

I remain of the view that the problems in this case were created by the Circuit Court for Prince George's County taking over a year to transfer the case to Montgomery County, and the Court of Special Appeals incorrectly deciding the case on appeal. I represented Ms. Peralta faithfully for almost four years, procured a settlement offer at the top of the range that could have been received had the case been heard by the Workers' Compensation Commission, spent money out of pocket on the case both at the Circuit Court and Court of Special Appeals level, and received no compensation whatsoever for my services.

Ms. Peralta claims that I never kept her informed of the status of the case. This is false. I met with her, always with her husband in attendance, approximately 15-20 times over the course of my representation. Either I or one of my employees spoke with either

Melvin Hirshman, Esquire
September 26, 2007
Page 4

Mr. or Ms. Peralta over the telephone dozens of times.

Ms. Peralta claims that I did not pay for the transcript. I did – attached is a copy of the check.

Ms. Peralta claims, although it is by no means clear, that I refused to help her after the Court of Special Appeals' decision. This is false. I urged her to allow me to seek further review in either the Court of Special Appeals or the Court of Appeals, but, at the urging of her husband, she refused to allow me to do so.

Ms. Peralta suggests that I was somehow in cahoots with the employer/insurer. I deny that allegation, of course, but to the extent you have questions, I suggest you contact David Jones, Esquire, the attorney for the employer/insurer, and ask him if he agrees with that sentiment.

I respectfully submit that no violation of any rule of professional conduct was violated in this unfortunate and protracted case. To the extent that you have further questions about any of the information contained herein, please do not hesitate to contact me.

Very truly yours,

Jonathan S. Shurberg